UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

LILIA CHAVEZ,
*Plaintiff*

Case No: **18      1769**

Complaint Filed:_____

vs.

SOUTHWEST AIRLINES COMPANY;
GE AVIATION, LLC;
SAFRAN S.A. d/b/a
SAFRAN AICRAFT ENGINES;
SAFRAN USA, INC.
CFM INTERNATIONAL, INC.;
*Defendants*

CIVIL COMPLAINT

FILED

APR 26 2018

KA... ...RKMAN, Clerk
By_____Dep. Clerk

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Lilia Chavez, by and through undersigned counsel, and for her Complaint against Defendants, jointly and severally, states as follows:

### PARTIES AND JURISDICTIONAL ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiff, Lilia Chavez, is a citizen and resident of the State of California.

2.      At all times material hereto, Defendant, Southwest Airlines Company, (hereafter "Southwest") is a corporation existing under the laws of the state of Texas and operates as a common carrier airline with its principle place of business believed and therefore averred to be located at 2702 Love Field Drive, Dallas, TX 75235 and is registered to conduct business in the Commonwealth of Pennsylvania and/or may be served within the Commonwealth of Pennsylvania at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

3.      Defendant GE Aviation, LLC (hereafter individually referred to as "GE") is a corporation existing under the laws of the state of Delaware with its principle place of business believed and therefore averred to be located at One Neuman Way, Cincinnati, OH 45215. GE does business individually, through a partnership, agency, and/or joint venture as CFM International.

The registered agent for GE is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

4.      Defendant Safran S.A. (hereafter individually referred to as "Safran") is a foreign corporation existing under the laws of the country of France which does business through its division Safran Aircraft Engines and is believed and therefore averred to be located at 2 Boulevard Du General Martial-Valin, Paris, 75742, France.  Safran does business individually, through a partnership, agency, and/or joint venture as CFM International.  Service of process may be had pursuant to The Hague Service Convention and Fed. R. Civ. P. 4(h)(2) and 4(f).

5.      Defendant Safran USA, Inc. (hereafter individually referred to as "Safran USA") is a Delaware corporation with its principle office believed and therefore averred to be located at 22091 West Royal Lane, Irving, Dallas County, Texas 75063. Safran USA is an affiliate of Safran S.A. and does business individually, through a partnership, agency, and/or joint venture as CFM International and/or is otherwise the United States entity appointed by Safran S.A. to support its domestic interests with respect to the engine product line.  The registered agent for Safran USA is believed and therefore averred to be Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

6.      At all times material hereto, Defendant CFM International, Inc. (hereafter "CFM") is a corporation existing under the laws of the state of Delaware with its principle place of business believed and therefore averred to be located at One Neuman Way, Cincinnati, OH 45215 and does business individually, through a partnership, agency, and/or joint venture as CFM International. CFM maintains a registered agent at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

7.     GE, Safran, Safran USA, and CFM are collectively referred to as "the CFM Defendants" when referencing the joint venture, agency, and/or partnership between these entities for the purpose of manufacturing, selling, supporting, and designing commercial aircraft engines.

8.     All conditions precedent to maintaining this cause of action have accrued.  The amount of controversy exceeds the minimum jurisdictional amount exclusive of costs and interest, and jurisdiction is otherwise proper before this Court as more fully alleged below.

9.     Jurisdiction is founded, in whole or in part, upon diversity of citizenship, 28 U.S.C. § 1332, in that (a) the amount in controversy exceeds $75,000.00, exclusive of costs and interest; (b) at all times material hereto, Plaintiff was a resident of the state of California; and (c) at all times material hereto, the Defendants were all incorporated in a state other than California and have their principle place in a state other than California.

10.    All defendants caused a tort, portions thereof, and/or consequences of a tort to occur in the Commonwealth of Pennsylvania.

11.    Venue is appropriate in the Eastern District of Pennsylvania because one or all of these defendants conduct substantial regular business in this District:

    a.     Defendant Southwest operates regular commercial flights from its assigned terminal located in Philadelphia County at the Philadelphia International Airport;

    b.     All defendants regularly and systematically conduct business, solicit business, and earn substantial revenue from business conducted within this district;

    c.     In addition, events giving rise to the cause of action occurred in Philadelphia County.

12.    All defendants are subject to personal jurisdiction in the Commonwealth of Pennsylvania:

3

a.     They committed torts within or outside of the Commonwealth which caused harm within the Commonwealth;

b.     Each defendant maintains sufficient minimum contacts with the Commonwealth of Pennsylvania by systematically, regularly, and continuously conducting business within the Commonwealth of Pennsylvania by availing themselves to the business opportunities here, conducting regularly scheduled flights and associated services from Pennsylvania, providing services to maintain CFM model engines and assure the continuing airworthiness of these engines in Pennsylvania;

c.     Plaintiff's cause of action arises from or is related to these contacts;

d.     Exercising personal jurisdiction over these defendants is consistent with due process considerations and is fair.

## BACKGROUND OF THE CAUSE OF ACTION

13.     Defendant Southwest is a commercial air carrier and owes the highest duty of care to its passengers to ensure safe carriage aboard those flights that it operates.

14.     Defendants CFM, GE, Safran and Safran USA, doing business as CFM International, manufactured, designed, and sold the CFM56-7B engines that are installed in certain Boeing 737-700 commercial aircraft.

15.     It is of the utmost importance that commercial air carriers as well as the manufacturers of commercial aircraft engines adhere to the highest standards of care to ensure that passengers are not subjected to any dangers which could induce an in-flight emergency or worse, an air disaster.

16.     Members of the public who engage in commercial air travel place the ultimate trust, and do in fact entrust their lives and safety, to entities such as Southwest and the CFM Defendants

4

and rely upon their good will, representations of dedications to safety, and apparent expertise over the airworthiness of their products and propriety of their services.

17.     These defendants, however, unforgivably breached that trust as they each were aware of a dangerous condition existing in the CFM56-7B engines which power those Boeing 737-700 aircraft that Southwest operate in its fleet of commercial aircraft.

18.     This knowledge, either in whole or in part along with additional reasons to be developed in discovery, arises from the in-flight uncontained engine failure that befell a Southwest Airlines Boeing 737-700 scheduled as Southwest Flight 3472 on August 27, 2016 when one the CFM56-7B engine fan blades failed, destroyed the engine compartment, and caused engine debris to strike and damage the aircraft fuselage.

19.     The uncontained engine failure that befell Flight 3472 was precipitated by a fatigue failure of the fan blade of the CFM56-7B engine.

20.     Subsequent to Flight 3472, Southwest and the CFM Defendants failed to take reasonable measures and failed to identify and correct the root cause of the metal fatigue failure of the fan blade and the uncontained nature of the failure to ensure that a future uncontained fan blade failure would not occur despite being on clear notice that such a failure could and did result in a projectile striking the aircraft fuselage.

21.     Instead, the CFM Defendants recommended inspections of the fan blades based on hours in service, however, upon information and belief Southwest did not follow, accelerate, nor properly perform these inspections on the Boeing 737-700 aircraft in its fleet including the subject aircraft.

22.     The fan blade inspections, however, are not the cure to the root cause of the problem, but rather a band aid masking a dangerous metallurgical, structural, casting, forging, or

5

metallic treatment-based design or manufacturing flaw, or other design or manufacturing defect rendering the fan blades incapable of withstanding the vibratory and/or thermal stresses encountered in normal operational service.

23. Despite this threat to the safety of Southwest's fleet of 737-700 aircraft, despite the snail's pace investigation into the root cause of Flight 3472's fan blade failure, these defendants provided no warnings to the flying public, provided no warnings to its actual customers, and in particular, provided no warnings to Plaintiff Lilia Chavez.

24. Instead of providing necessary warnings or otherwise removing dangerous engines from service, Southwest continued to operate commercial air carrier services despite knowing that its Boeing 737-300 aircraft, including the subject aircraft, were operating with an unresolved and undisclosed unsafe condition.

25. On April 17, 2018, Ms. Chavez was a fare-paying passenger aboard Southwest Airlines Flight 1380 which was a scheduled flight originating at New York-LaGuardia Airport.

26. Ms. Chavez relied on the representations, warranties of the defendants, and entrusted her safety to Southwest and the CFM Defendants as she was completely unaware of the dangerous condition plaguing the aircraft's engines; a risk that never would have been accepted had it been disclosed to her.

27. Approximately 20 minutes after Flight 1380 took off and was flying in the airspace over the Commonwealth of Pennsylvania, the left CFM56-7B engine suffered a catastrophic uncontained failure of a fan blade causing unexpected and sudden pitch and/or bank movements of the aircraft and a resulting controlled rapid emergency decent.

28. Debris from the uncontained engine failure struck the aircraft's fuselage and shattered a passenger's window causing rapid depressurization.

6

29.     Ms. Chavez was sitting three seats behind the location of the shattered window.

30.     Ms. Chavez witnessed the horror as the force of the depressurization pulled an innocent passenger partially through the shattered window and she watched as passengers risked their lives to pull the passenger back into the aircraft and save her life.

31.     The engine failure and breach of the window caused severe vibrations and the cabin environment to become a whirlwind of airflow and airborne debris which struck Ms. Chavez and obstructed her breathing.

32.     This environment exacerbated Ms. Chavez' panic and horror and in the midst of the violent conditions within the cabin; she prayed and feared for her life, she heard other passengers using their cell phones to reach out to loved ones to say their final goodbyes, she herself contacted her children to tell them that she loved them and that she was preparing to die aboard the crippled aircraft.

33.     Flight 1380 was diverted to Philadelphia International Airport where it landed and passengers disembarked only to be encountered by a team of people actually or ostensibly working on behalf of Southwest whose questions and treatment of passengers revealed a failure to account for the shock that these innocent victims, including Ms. Chavez, were experiencing.

34.     The individuals actually, or ostensibly, working on behalf of Southwest, failed to use the appropriate care of Ms. Chavez and exacerbated the traumatic stress she experienced.

35.     Photographs taken of the failed left engine and published by news reports reveals a missing fan blade with reports that the fracture surfaces showed signs of metal fatigue.

36.     Plaintiff's investigation thus far supports a finding that the blade failure which occurred on Southwest Flight 1380 was identical and/or substantially similar to the fan blade failure which occurred on Southwest Flight 3472.

7

37.     As a direct and proximate cause of the traumatic events that befell Flight 1380 Plaintiff Lilia Chavez suffered and continues to suffer, severe personal injuries including but not limited to post-traumatic stress disorder, anxiety, emotional distress, depression, personal injuries to her body including the physical manifestations of the emotional and mental trauma she experienced and continues to suffer, and seeks recovery for all damages including but not limited to, damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright. Plaintiff further seeks all other available compensatory damages, as well as punitive damages against the Defendants and each of them for their reckless misconduct and conscious disregard for her safety, health, life and wellbeing.

### COUNT I:  Negligence
### Plaintiff vs. Southwest

38.     Paragraphs 1 through 37 are incorporated by reference as if fully set forth.

39.     As a common carrier and/or commercial airline carrier, Southwest owed a duty of care to its passengers, including Ms. Chavez, to ensure that the aircraft and engines that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers, and owed duties to perform any duties that it assumed in a professional and reasonably prudent manner in the context of the circumstances presented.

8

40.     As an air carrier, Southwest also owed regulatory duties to ensure that the aircraft that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, and owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers; the breaches of such regulatory duties constitute negligence per se.

41.     Defendant Southwest breached the foregoing duties of care owed to Plaintiff Lilia Chavez as follows:

a.     Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

b.     Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

c.     Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

d.     Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

e.     Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

f.     Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

9

g.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

h.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.      Failing to take appropriate and reasonable corrective measures after the in-flight emergency that befell Flight 3472 to ensure that similar uncontained engine failures would not occur;

j.      Failing to take appropriate and reasonable measures to ensure that the aircraft engines used in its fleet, including the subject CFM56-7B, were free of design and/or manufacturing defects rendering it unsafe for flight;

k.      Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

l.      Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

m.      Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not been remedied, whose root cause had not been addressed, to prevent further catastrophe;

10

n.      Failing to warn Plaintiff that the subject aircraft and its engine contained an unsafe condition and/or design or manufacturing defects that had not been rectified after a prior malfunction approximately a year before;

o.      Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

p.      Failing to properly train its team of employees and/or agents responsible to contend with passengers who were in shock after experiencing an in-flight emergency and exacerbating her trauma and shock;

q.      Failing to act reasonably by harassing Plaintiff through placing recorded telephone calls and exacerbating Plaintiff's post-traumatic stress;

r.      Failing to act reasonably for reasons to be developed in discovery of this action.

42.    As a direct and proximate cause of the forgoing breaches by Defendant Southwest of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendant in her favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## COUNT II: Breach of Contract and Warranties
## Plaintiff vs. Southwest

43.    Paragraphs 1 through 42 are incorporated by reference as if fully set forth.

44.     Defendant Southwest is a commercial air carrier and offers its services to the public for a profit. This defendant holds itself out to the public as a company that a has a commitment to safety and has adopted the highest safety standards to ensure its passenger's safety.

45.     Plaintiff contracted with Defendant Southwest as a fare paying passenger for safe carriage and transport from her origination to her destination.

46.     Included within that contract was Southwest's obligation to provide an aircraft that was in a condition safe for flight.

47.     Plaintiff relied upon the representations, good will, warranties, and contractual obligations that Southwest promised it would perform.

48.     Southwest breached its contractual obligations and warranties in the following respects:

        a.     Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

        b.     Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

        c.     Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

        d.     Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

        e.     Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

12

f.     Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

g.     Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

h.     Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.     Failing to take appropriate and reasonable corrective measures after the in-flight emergency that befell Flight 3472 to ensure that such events did not repeat themselves;

j.     Failing to take appropriate and reasonable measures to ensure that the aircraft it used in its fleet, including the subject Boeing 737-700, were free of design and/or manufacturing defects rendering it unsafe for flight;

k.     Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

l.     Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

m.     Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not

13

been remedied, whose root cause had not been addressed, to prevent further potential catastrophe;

      n.     Failing to warn plaintiff that the subject aircraft and its engine contained serious design defects that had not been rectified after a prior malfunction approximately a year before;

      o.     Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

      p.     Failing to act reasonably for reasons to be developed in discovery of this action.

49.     As a direct and proximate cause of the forgoing breaches by Defendant Southwest of duties it owed to Plaintiff, and here reasonable reliance thereon, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendant in her favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## COUNT III: Negligence
### Plaintiff vs. GE Aviation, Safran, Safran USA, and CFM

50.     Paragraphs 1 through 49 are incorporated by reference as if fully set forth.

51.     Those defendants collectively referred to the CFM Defendants are the manufacturer, seller, and designer of commercial aircraft engines including the subject CFM56-7B. These defendants collectively hold themselves and their joint venture out to the public as a company that a has a commitment to safety and has adopted the highest safety standards to ensure the safety of the users of its products. As such, these defendants owed Plaintiff duties of care to

14

ensure that its products were not dangerous, unsafe, unairworthy, or defective and to warn of any dangers that would affect the safety of flight and put users of its products in danger.

52.    In addition to duties imposed by common law, the CFM Defendants are subject to regulatory duties, the breaches of which constitute negligence per se.

53.    The CFM Defendants breached its duties owed to Plaintiff as follows:

a.    Failing to properly test, design, construct, build, or specify the engine assemblies to ensure that they possess all of the necessary features to be capable of containing an internal engine malfunction such as the one experienced on Flight 1380;

b.    Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the subject engine assembly to contain a failure of the internal components of the subject engine;

c.    Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

d.    Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

e    Failing to warn users of its product that the engine assembly suffered from design and/or manufacturing defects rendering it unsafe for flight because it was incapable of containing an internal engine malfunction such as the one experienced on Flight 1380;

f.    Failing to properly test, design, construct, build, or specify test the internal

engine components of its aircraft's engines to ensure that they are capable of withstanding the stresses imparted to them to prevent a premature failure;

g.      Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the internal engine components used in the CFM56-7B engine such as its fan blades;

h.      Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

i.      Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

j.      Failing to warn users of its product that the CFM56-7B internal engine components such as its fan blades suffered from design and/or manufacturing defects rendering them unsafe for flight because they were incapable of withstanding the stresses encountered under normal engine operating conditions;

k.      Failing to properly audit, monitor, evaluate, and ensure that vendors who manufacture, forge, and/or sell, component parts installed in its aircraft, such as the internal components of the CFM56-7B engine which malfunctioned during Flight 1380, to ensure that the products they produce are safe, airworthy, met specifications, and did not contain any features which would cause an engine malfunction;

l.      Failing to properly make the necessary design changes and or decisions to discontinue or postpone service of those engines which potentially and/or in fact did possess inherent design defects in their engines;

16

m.    Failing to provide the warnings necessary to make the subject engines safe for use in commercial aircraft operation;

n.    Failing to act reasonably, prudently, and/or in accordance with the standard of care in connection with the support, design, sale, manufacture, of the subject engine;

o.    Failing to act reasonably, prudently, and/or in accordance with the standard of care for reasons to be developed in discovery of this action.

54.    As a direct and proximate cause of the forgoing breaches by the CFM Defendants of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in her favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

### COUNT IV: Strict Liability
### Plaintiff vs. GE Aviation, Safran, Safran USA, and CFM

55.    Paragraphs 1 through 54 are incorporated by reference as if fully set forth.

56.    The CFM Defendants are a manufacturer, seller, and designer and/or through partnership, joint venture, agency or otherwise are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

57.    The CFM Defendants did manufacture, sell, and design the subject aircraft.

58.    The subject CFM56-7B engine was defectively designed in the following respects:

a.    The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

17

b.     Engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

c.     The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

d.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

e.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

f.     The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

g.     The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

h.     The engine was defectively designed because it contained unsafe conditions and features rendering it dangerous, susceptible to uncontained failure, susceptible to fatigue fractures of the fan blades all of which were reasonably likely to occur between inspection schedules;

18

      i.     The engine was defectively designed for reasons that will be developed in the discovery of this matter.

59.    The risks associated with the foregoing defects were so severe that they could cause certain death in a commercial airline disaster that they outweighed any benefit to cost, production, ease of manufacture, or otherwise.

60.    The nature of the design and/or manufacturing defects were so profound that no ordinary user of the product would accept them.

61.    As a direct and proximate cause of the forgoing design defects, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in Plaintiff's favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

### COUNT V: Breach of Express and Implied Warranties
### Plaintiff vs. GE Aviation, Safran, Safran USA, and CFM

62.    Paragraphs 1 through 61 are incorporated by reference as if fully set forth.

63.    The CFM Defendants are a manufacturer, seller, and designer and/or through partnership, joint venture, agency or otherwise are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

64.    These defendants did manufacture, sell, and design the subject aircraft.

65.    The CFM Defendants warranted expressly and/or impliedly that the aircraft engines were free of material defects, that they were merchantable and fit for the particular purpose

intended, that they were airworthy, that were safe for flight, and fit for use in commercial aircraft, and that these warranties ran to Plaintiff as an intended and/or third-party beneficiary.

66.     The CFM Defendants described and advertised its products including the subject model engine. Such descriptions and advertisements included, but were not limited to advertising brochures, instructions, manuals, specification sheets, web-based information and other products, statements and representations. These descriptions, representations and affirmations concerning the goods and services of Defendant resulted in express warranties that the goods were as described and sold for their intended use.

67.     These descriptions, representations, affirmations and express warranties became part of the basis of the bargain of their sale and these warranties ran to Plaintiff upon which Plaintiffs relied.

68.     Plaintiff was a member of the class to whom the warranties were intended to protect.

69.     The CFM Defendants breached the express and implied warranties because:

a.     The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

b.     The engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

c.     The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

20

d.      The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

e.      The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

f.      The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

g.      The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

h.      The engine was defectively designed for reasons that will be developed in the discovery of this matter.

70.     As a direct and proximate cause of the forgoing breaches, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in her favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

### COUNT VI: Willful, Wanton, and Outrageous Misconduct
### Plaintiff vs. Southwest, GE Aviation, Safran, Safran USA, and CFM

71.     Paragraphs 1 through 70 are incorporated by reference as if fully set forth.

21

72.     The conduct giving rise to the breaches of duties owed by Southwest and the CFM Defendants described above, are especially egregious and aggravated because they were committed with knowledge that the subject aircraft engine had a dangerous design defect.

73.     This knowledge is detailed in paragraphs 13 through 24 above.  These facts show that the defendants, collectively and or individually, had actual knowledge of an unsafe condition in the engine that had not been remedied since the last known failure only a year before Flight 1380.

74.     Despite knowing of the dangerous condition of the subject aircraft's engine, the defendants risked the lives of more than a hundred innocent passengers, including Plaintiff, by electing not to discontinue service with the use of aircraft equipped with these engines or otherwise electing not to inform passengers of the nature of the existing dangerous condition.

75.     The Defendants knew that the evaluation of the failed engine components of Flight 3472 was moving at a slow pace and that even though more than a year had passed a root cause of the failure had not been corrected.

76.     Rather than protect the safety of Plaintiff and those who also were fare paying customers, the defendants' misconduct placed profits and business over the safety of its customers and continued to operate these engines even though there was confirmation that an unsafe condition existed which had not been corrected since the failure that befell the 2016 incident involving Flight 3472.

77.     Given the gravity of harm that could befall passengers in a commercial aircraft which would be a certain catastrophe such as what befell Flight 1380 on April 17, 2018, these defendants acted with malice, recklessness, and with disregard for the rights of others including Plaintiff.

22

78.     As a direct and proximate cause of the forgoing misconduct, the subject CFM56-7b engine experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in her favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a jury trial to all issues so triable.

Respectfully submitted this 26th Day of April, 2018.

ATTORNEYS FOR PLAINTIFF

Bradley J. Stoll, Esq.
KATZMAN, LAMPERT, & STOLL
121 North Wayne Ave. #205
Wayne, PA 19087
Phone:  (610) 686-9686
Fax:     (610) 686-9687
bstoll@klm-law.com

FILED

APR 26 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk